UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMX ENVIRONMENTAL EVOLUTION, LTD., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:08-CV-0908-G |
| CARROLL FULMER LOGISTICS CORPORATION, | ) ) ) | **ECF** |
| Defendant. | ) ) | |

MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, Allcorp Partners Acquisition,

Limited, d/b/a AMX Environmental Evolution, Limited ("AMX" or "the plaintiff") to

amend its pleading for the purpose of joining additional parties.  For the reasons

discussed below, the motion to join American Compliance Technologies, Inc.

("ACT") and TAS Environmental Services, L.P. ("TAS") is granted.

I. BACKGROUND

This case arises out of an accident that occurred on July 5, 2007, when a

tractor trailer crashed and spilled diesel fuel on a highway median in Dallas County,

Texas.  Carroll Fulmer's Response in Opposition to Plaintiff's Motion to File

Amended Pleading and Join Parties ("Response") ¶ 1.  The tractor trailer was owned

by the defendant, Carroll Fulmer Logistics Corporation ("Carroll Fulmer" or "the

defendant").  *Id.*  AMX claims that, at the request of the Texas Department of

Transportation, it spent $121,832.15 to clean up the spill.  Plaintiff's Reply to

Defendant Carroll Fulmer's Response to Plaintiff's Motion to File Amended Pleading

and Join Parties ("Reply") ¶¶ 2, 7.  AMX argues that, although it spent this money on

the defendant's behalf, the defendant has yet to reimburse AMX.  *Id.* ¶ 12.  Carroll

Fulmer acknowledges it has not paid AMX, but disputes the reasonableness and

amount of AMX's bill.  Response ¶ 2.  According to Carroll Fulmer, AMX's work at

the clean-up site was deficient.  *Id.*  Because AMX's clean-up was allegedly deficient,

Carroll Fulmer retained a third-party environmental consultant to finish the clean-up

project and to correct AMX's alleged deficiencies.  *Id.*

AMX filed this suit in state court on April 25, 2008, seeking the $121,832.15.

Original Petition for Suit on Sworn Account and Request for Disclosure at 4

(attached as Exhibit C-2 to the Notice of Removal).  The defendant timely removed

the case to this court on May 29, 2008, based on diversity of citizenship jurisdiction.

Response ¶ 3.  On December 10, 2008, the plaintiff filed the instant motion to

amend its pleading and to join ACT and TAS as defendants in the current action

("the Motion to Join").  Carroll Fulmer only opposes the joinder of additional parties.

The court has already ruled on the unopposed portion of that motion and allowed the plaintiff to file an amended complaint.  Thus, the court now considers only that portion of the motion concerning the joinder of ACT and TAS.

According to AMX, ACT is the party that initially requested AMX to clean up the spill and that communicated with AMX throughout the clean-up process.  Motion to Join ¶ 13.  On December 4, 2007, ACT sent a letter to AMX stating that ACT intended to recommend that Carroll Fulmer pay AMX only $44,978.37 of the $121,832.15 originally billed.  *See* Letter from ACT to AMX dated December 4, 2007, ("the December 4 Letter"), at 1-2 (attached as Exhibit B to the Amended/ Supplemental Motion).  ACT recommended this lower amount after reviewing information provided by a third-party environmental firm, which indicated that the clean-up project "was not handled properly [by AMX] and that transportation and disposal of an excessive amount of soil was charged to our client, [Carroll Fulmer]." *Id.*  In the December 4 letter, ACT did not identify the third-party firm it had retained to aid in the clean-up, and instead referred only abstractly to a "third party environmental contracting firm retained by" ACT.  *Id*. at 1.  Because of ACT's alleged involvement in the defendant's decision to pay AMX less than the invoiced amount, AMX seeks to now join ACT to the current dispute.

AMX also contends that TAS may have influenced its dispute with Carroll Fulmer; it believes that TAS is the third party environmental contracting firm

retained by ACT.  AMX asserts that TAS may have made defamatory statements

against it and otherwise tortiously interfered with AMX's business and contractual

relationship with Carroll Fulmer.  Motion to Join ¶¶ 13-14.  AMX claims that it

learned about TAS's alleged involvement indirectly -- after receiving pretrial

documents from ACT -- and then deducing that TAS could be the unidentified third-

party environmental firm that ACT referred to in the December 4 letter.  *See* Motion

to Join, Exhibit A, ¶¶ 16, 29-31.

## II.  ANALYSIS

### A.  Legal Standard

When a plaintiff seeks joinder of additional non-diverse defendants after

removal, the court -- pursuant to 28 U.S.C. § 1447(e) -- has two options:  (1) deny

the joinder, or (2) permit the joinder, thus destroying diversity of citizenship of the

parties, and remand the action to the state court.  The Fifth Circuit has advised

district courts to closely scrutinize an amendment which would destroy subject matter

jurisdiction and that justice requires the consideration of a number of factors to

determine if the amendment should be permitted.  See *Hensgens v. Deere & Company*,

833 F.2d 1179, 1182 (5th Cir. 1987); see also *Doleac ex rel. Doleac v. Michalson*, 264

F.3d 470, 474 (5th Cir. 2001); *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir.

1999).[1]

---

[1]       Subsection (e) of section 1447 provides:  "If after removal the plaintiff
(continued...)

- 4 -

In *Hensgens*, the Fifth Circuit outlined four factors which the district court should, in its discretion, consider when a plaintiff seeks joinder of a non-diverse defendant after removal:  (1) the extent to which the purpose of the amendment of the complaint is to defeat federal jurisdiction; (2) the degree of dilatory conduct on the part of the plaintiff; (3) the risk of significant injury to the plaintiff if the amendment is not allowed; and (4) any other equitable considerations.  833 F.2d at 1182.  The purpose of weighing these factors, according to *Hensgens*, is to balance the defendants' interest in maintaining a federal forum against the plaintiff's interest in avoiding multiple and parallel litigation.  *Id.*

### B.   Joinder of TAS and ACT

#### 1.  *Factors One and Two*

The first two *Hensgens* factors concern the extent to which joinder of TAS, as a non-diverse party, is sought to defeat diversity jurisdiction and the extent to which the plaintiff was dilatory in seeking to add TAS.  *See id.*  Carroll Fulmer contends that AMX could have included TAS as an original defendant in its initial state-court filing since AMX knew, from the December 4th letter, that it had a possible claim against TAS.  Response ¶ 7.  The defendant interprets the fact that AMX did not join TAS earlier as proof that AMX only seeks to add TAS now in order to destroy federal

---

[1](...continued)
seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).

jurisdiction. *Id.* (citing *Rosa v. Aqualine Res., Inc.*, No. Civ.A.3:04-CV-0915-B, 2004 WL 2479900, at *2 (N.D. Tex. Oct. 28, 2004)).

Normally, sudden efforts to join a non-diverse party after a case has been properly removed weigh against allowing the joinder.  See *In re Norplant Contraceptive Products Liability Litigation*, 898 F. Supp. 433, 435 (E.D. Tex. 1995); see also *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999) ("Especially where, as here, a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction."). Here, however, the December 4 letter did not specifically identify TAS as having any connection with the spill clean-up.  Moreover, the defendant did not specifically identify TAS or its potential role in the clean-up in either of its initial disclosures. According to AMX, it was not aware of TAS's involvement until ACT produced a pretrial document identifying TAS as having charged ACT $1,500.00 for services in connection with the clean-up.  Reply ¶ 11.  Carroll Fulmer, on the other hand, claims that AMX had documents identifying TAS from at least December 2007 -- well before AMX filed suit in state court.  Carroll Fulmer Logistics Corporation's Sur-Reply in Opposition to Plaintiff's Original Motion for Leave to File Amend Pleading and Join Parties ("Sur-Reply") at 1.

At this early stage of the case, the court is required to evaluate factual allegations in the light most favorable to the plaintiff.  See *McNeel v. Kemper Casualty Insurance Company*, No. 3:04-CV-0734-G, 2004 WL 1635757, at *4 (N.D. Tex. July 21, 2004).  Consequently, the court finds that AMX's delay in adding TAS as a defendant is reasonable, since it argues it did not become aware of TAS's involvement until it received pretrial documents from ACT.  Moreover, where a plaintiff brings a viable claim against the proposed defendant, "it is unlikely that the primary purpose of the [joinder] amendment is to destroy diversity jurisdiction."  *Id.* at *2.  Here, AMX's proposed causes of action against TAS, which include, among others, allegations of defamation and of tortious interference with the business relationship between AMX and Carroll Fulmer, are viable claims.  Given that ACT acknowledges its reliance on a "third party" in making its decision to pay AMX less than the invoiced amount for the clean-up, there is a possibility that TAS may be liable for defamation or tortious interference.  *See* December 4 Letter; *see also* Response ¶ 2.  Thus, AMX has demonstrated that its motives for joining TAS transcend mere jurisdictional subterfuge and instead center on pursuit of relief against those parties that may have played a role in the controversy.  See, *e.g.*, *In re Norplant*, 898 F. Supp. at 435 (noting that where a plaintiff discovers the non-diverse party's activities after the case is removed, the later amendment to join is likely not for the express purpose of defeating diversity jurisdiction).

ACT is a diverse party from all other parties.  As a result, Carroll Fulmer does not argue that AMX's motive in seeking joinder of ACT is dilatory or for the purpose of destroying diversity.  For the reasons discussed above, the court concludes that AMX's motive in seeking joinder of TAS is also not dilatory or for the purpose of destroying diversity.  Thus, the first two *Hensgens* factors weigh in favor of allowing the joinder of both TAS and ACT.

2.  *Factor Three*

The third *Hensgens* factor requires the court to evaluate the risk of significant injury to the plaintiff if the amendment is not allowed.  *Hensgens*, 833 F.2d at 1182.  First, if the court were to deny AMX's motion to join, AMX would then have to initiate a separate state-court proceeding against TAS and ACT.  Requiring a plaintiff to pursue parallel federal and state court actions is generally disfavored since separate proceedings create judicial inefficiency and increase the possibility of conflicting outcomes.  See *McNeel*, 2004 WL 1635757, at *4 (applying the third *Hensgens* factor and noting that "[c]onsiderations of cost, judicial efficiency, and possible inconsistency of results militate in favor of not requiring [the plaintiff] to prosecute two separate claims in two separate forums when both arise from the same set of facts").  Here, it is apparent that AMX's causes of action against Carroll Fulmer, ACT, and TAS arise out of the single diesel spill incident.  As a result, there will undoubtedly be considerable overlap in the facts relevant to each cause of action.  *See*

- 8 -

FED. R. CIV. P. 20 (noting that, for joinder considerations, a plaintiff must show that relief sought against the parties "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences" and involves common questions of law and fact). If joinder of TAS were disallowed, judicial resources would be wasted, the danger of inconsistent outcomes would be heightened, and the cost to plaintiff of pursuing these actions would necessarily increase. In short, significant prejudice to AMX would inevitably result.

Defendant, however, points the court to *O'Connor v. Automobile Insurance Company of Hartford Connecticut*, 846 F. Supp. 39, 41 (E.D. Tex. 1994), in support of its argument that the extent of potential prejudice to plaintiff is measured by whether (1) the non-diverse defendant is the sole cause of plaintiff's harm, and (2) whether the existing defendant can satisfy the judgment. *See* Response ¶ 8.[2] That case is distinguishable on its facts, however. In *O'Connor*, the plaintiff knew of the proposed defendant's role in the controversy *before* he filed the original suit, and had in fact identified the proposed defendant in his original state-court petition. *O'Connor*, 846

---

[2]     Defendant acknowledges that these two considerations are not the end of the prejudice inquiry. Response ¶ 9. Rather, the court considers all aspects of possible prejudice to the plaintiff, including, for example, the potential that the plaintiff will be required to litigate parallel proceedings. See *Dal-Tile Corporation v. Zurich American Insurance Company*, No. 3:02-CV-0751-H, 2002 WL 1878377, at *2 (N.D. Tex. Aug. 13, 2002); *Kelley v. Vermont Mutual Insurance Company*, 407 F. Supp. 2d 301, 307-09 (D. Mass. 2005) (applying the *Hengens* factors and determining that the potential for parallel litigation and the resultant prejudice to a plaintiff weigh in favor of allowing joinder).

F. Supp. 39 at 41.  Thus, the court began its evaluation of the *Hensgens* factors from a point of "much suspicion" that the plaintiff's joinder amendment was "primarily for the purpose of defeating federal jurisdiction." *Id.*  Moreover, in weighing the prejudice factor specifically, the *O'Connor* court noted that the plaintiff faced other "legal obstacles" beyond the propriety of joinder in bringing claims against the proposed defendant.  *Id.*  In the instant case. although the plaintiff does not allege that TAS is the sole cause of plaintiff's harm, it does appear that the claims against TAS are viable, independent claims arising out of the diesel spill incident.  Thus, it is probable that significant overlap will exist in the facts and circumstances of the claims against Carroll Fulmer, TAS, and ACT.  Requiring AMX to bring a separate suit against TAS will no doubt prejudice AMX.  The third factor thus weighs in favor of allowing the amendment.

3.  *Factor Four*

Finally, the court must weigh any other equitable considerations bearing on the amendment.  *Hensgens*, 833 F.2d at 1182.  The defendant asks the court to consider that judicial economy and costs to the defendant actually weigh *against* allowing the amendment because, by adding TAS, "Carroll Fulmer and TAS will be forced to attend depositions, discovery hearings, and possible dispositive motion hearings that have no bearing on AMX's respective claims against them."  Response ¶ 11.  As mentioned, however, the plaintiff must simply show that the relief sought against the

parties arises "out of the same transaction, occurrence, or series of transactions or occurrences" and involves common questions of law and fact.  FED. R. CIV. P. 20. While it may be true to some extent that Carroll Fulmer and TAS will be required to participate in each others' respective trial preparation activities, judicial economy is best served by avoiding, where possible, parallel litigation.  Moreover, the court "should not deny [the plaintiff] the opportunity to bring all of [its] related claims in one suit."  *McNeel*, 2004 WL 1635757, at *4 (citing *Holcomb v. Brience, Inc.*, No. 3:01-CV-1715-M, 2001 WL 1480756, at *3 (N.D. Tex. Nov. 20, 2001)).

Carroll Fulmer finally argues that if any evidence of malicious acts on TAS's part come to light during the case, that evidence will prejudice the jury against Carroll Fulmer and distort the jury's ability to "impartially adjudicate Carroll Fulmer's liability."  Response ¶ 12.  The court does not agree that evidence of malicious acts by one defendant will taint the jury's view of all other defendants.  In sum, the court concludes that under the circumstances of this case, the balance of the equities favors granting AMX's motion to add TAS as an additional defendant.

### III.  CONCLUSION

For the reasons discussed above, AMX's motion to join TAS and ACT as additional defendants is **GRANTED**.  Because the addition of TAS as a defendant will destroy complete diversity, the court no longer has subject matter jurisdiction over this case, and it is therefore ordered **REMANDED**, pursuant to 28 U.S.C.

- 11 -

§ 1447(e), to the state district court from which it was removed, the **162nd Judicial District Court of Dallas County, Texas**.

      **SO ORDERED**.

April 9, 2009.

                                          A. JOE FISH
                                          **Senior United States District Judge**